## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.A.-1, L.A, and M.C.**

**No. 18-0943** (Hampshire County 17-JA-86, 17-JA-87, and 17-JA-88)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.C., by counsel David C. Fuellhart, III, appeals the Circuit Court of Hampshire County's July 31, 2018, order terminating her parental rights to R.A.-1, M.C., and L.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period, terminating her parental rights, and denying her post-termination visitation.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2017, the DHHR filed a petition alleging that petitioner's step-daughter, G.A., was sexually abused by her father, R.A.-2, and that petitioner failed to protect her children from potential abuse. G.A.'s biological mother is R.A.-2's ex-wife, J.A. Although, G.A. did not

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as a child and petitioner's husband share the same initials, we refer to them as R.A.-1 and R.A.-2, respectively, throughout this decision.

[2]Petitioner refers to a "dispositional improvement period" in her assignment of error. However, West Virginia Code § 49-4-610 provides for preadjudicatory, post-adjudicatory, and post-dispositional improvement periods. Considering the circumstances of these proceedings and petitioner's argument, we assume petitioner's assignment of error refers to a post-dispositional improvement period and address it as such.

1

live with petitioner and R.A.-2, the DHHR alleged that G.A. visited their home regularly with her mother, J.A. The DHHR alleged that petitioner found R.A.-2 and G.A. in the bathroom during an incident of sexual abuse, but did not disclose the incident to the police or the DHHR. According to the DHHR, R.A.-2 continued to have consistent contact with G.A. following the abuse. Petitioner waived her preliminary hearing.

The circuit court held three adjudicatory hearings in January, March, and April of 2018. The forensic interview of G.A. was admitted into evidence without objection. The circuit court found that the forensic interview of G.A. was reliable, credible, and probative as to the question of whether the child was sexually abused by R.A.-2. In the interview, G.A. stated that she first disclosed to her friend that someone inappropriately touched her. G.A. described a time that R.A.-2 tickled her to the point that she urinated on herself and then he took her inside his home to change her clothes. G.A. was asked what part of the body she was touched on and she responded by circling the vagina on an anatomically correct female drawing. The interviewer asked G.A. what she was touched with and she circled the penis on a male drawing. The circuit court found that G.A. stated that "she felt horrible, she felt sick, and she told him to stop." When the interviewer asked what made it stop, the child stated that petitioner "walked in and 'caught him.'" The circuit court noted that the child indicated she told her mother, J.A., but "she didn't say anything about it." The circuit court further noted that the child "had a difficult time discussing what happened to her in the Child First Interview and broke out in a rash and/or hives during the process."

According to the circuit court's findings, petitioner testified that, during the "bathroom incident," she noted that R.A.-2 and the child were gone for a long time and she became concerned. She yelled for R.A.-2 inside the home, but heard no response. Eventually, she went into the bathroom and

> observed the minor child, G.A., sitting on the toilet completely naked; that her arms were around [R.A.-2]; that [R.A.-2] was crouched down in . . . front of the child; that he had one arm around the child; that his other hand was in . . . front of him, but his hand was not visible to her.

Petitioner asked R.A.-2 what he was doing and he stated that he was giving the child a hug. Petitioner testified that R.A.-2 "looked as if he had seen a ghost, like he jumped out of his skin" and that G.A. looked terrified. Following that incident, petitioner and J.A. agreed not to allow R.A.-2 around the children alone. However, petitioner admitted that it was not always possible to supervise the children while R.A.-2 was around.

Further, petitioner stipulated to the allegations that she failed to protect the children from R.A.-2 following the "bathroom incident." Despite her stipulation, petitioner testified that, while she did believe that G.A. was sexually abused, she was unsure that R.A.-2 was the person who abused her. Petitioner explained that she continued to be in a relationship with R.A.-2, but would end the relationship if it would hurt her chances of receiving custody of her children.

Ultimately, the circuit court found that G.A.'s "disclosure of sexual abuse was credible and consistent with the observations of [petitioner], which were to a degree corroborated with

2

[J.A.]." The circuit court further found that none of the respondents "could articulate a reason as to why [G.A.] would in any way fabricate any allegations of sexual abuse" and that there was "no indication or evidence" that she was coached to make the disclosures. The circuit court concluded that G.A. was sexually abused by R.A.-2 and that petitioner failed to protect the children. The circuit court adjudicated petitioner as an abusing parent.

In July of 2018, the circuit court held the final dispositional hearing. The DHHR presented evidence to support the termination of petitioner's parental rights. Petitioner did not testify. The circuit court found that "[petitioner] remains in a relationship with [r]espondent [R.A.-2]. She provided no testimony to dispute this fact at the disposition hearing." Additionally, the circuit court found that petitioner's failure to leave the relationship made her stipulation "disingenuous and incongruous with the best interest and safety of her children" and rendered her unlikely to fully participate in an improvement period. Finally, the circuit court found that there was no reasonable likelihood that petitioner could correct the behaviors that warranted the removal of the children and that termination of petitioner's parental rights was in the best interest of the children. The circuit court also denied petitioner post-termination visitation with the children on the basis that she could not ensure the safety of the children. Accordingly, the circuit court terminated petitioner's parental rights by its July 31, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period because she demonstrated by clear and convincing evidence that she would participate in the improvement period. Petitioner asserts that the circuit court's

---

[3]The respective fathers' parental rights were also terminated. According to the parties, the permanency plan for the children is adoption in their current foster placement.

finding that she would not end her relationship with R.A.-2 is contrary to the record. Further, petitioner argues that the DHHR's failure to present evidence that petitioner would not comply with an improvement period lowers the evidentiary burden. We disagree. West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

The circuit court did not err in denying petitioner's motion for a post-dispositional improvement period because she failed to prove by clear and convincing evidence that she would participate in the improvement period. Although petitioner stipulated to the allegations that she failed to protect her step-daughter from R.A.-2's sexual abuse, she failed to acknowledge that a continued relationship with R.A.-2 would place her own children in danger. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). According to the record, petitioner considered ending her relationship with R.A.-2 only if the relationship would damage her chances that the children would return to her custody. Petitioner clearly did not realize that R.A.-2's conduct was harmful to her children and could not be corrected. Petitioner testified that the relationship continued during the April of 2018 adjudicatory hearing and never presented any evidence that she sought to end the relationship thereafter. The record fully supports the circuit court's finding that petitioner continued to place her children in danger. Further, petitioner's argument that the DHHR's failure to present evidence as to her inability to participate in an improvement period lowered her evidentiary burden is not supported by the law of this State or this Court's prior holdings. West Virginia Code § 49-4-610 clearly provides that the parent must demonstrate "by clear and convincing evidence" that she is likely to participate in an improvement period. However, in this case, petitioner demonstrated an inability to grasp the danger that R.A.-2 presented to her children. Accordingly, we find that the circuit court did not err in denying petitioner's motion for a post-dispositional improvement period.

Second, petitioner argues that the circuit court's finding that that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future was erroneous and not supported by the record. Petitioner asserts that a temporary guardianship, pursuant to West Virginia Code § 49-4-604(b)(5), would have given her an opportunity to participate in services with the DHHR and remedy the conditions of abuse and

neglect. We find no merit to petitioner's argument. West Virginia Code § 49-4-604(b)(6) provides, in relevant part, that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) provides, in relevant part, that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect based on petitioner's failure to acknowledge the danger in her continued relationship with R.A.-2. Despite clear and convincing evidence that G.A. was sexually abused by R.A.-2, petitioner took no action to leave her relationship with R.A.-2. Even more concerning, petitioner regressed from her admission that she failed to protect her children from R.A.-2 to the point that she no longer believed R.A.-2 sexually abused G.A. Petitioner expressed her desire to continue that relationship unless it hurt her chances that the children would be returned to her. She did not express any desire to protect her children from potential sexual abuse. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Further, the circuit court properly found that termination was necessary for the welfare of the children. Petitioner's ongoing relationship with R.A.-2 exposed her children to the threat of sexual abuse, and petitioner could not show that she would take appropriate action to provide for their safety. We have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court's findings support the termination of petitioner's parental rights. Contrary to petitioner's argument in support of temporary guardianship, the circuit court did not abuse its discretion by terminating petitioner's parental rights rather than imposing a less-restrictive dispositional alternative. Accordingly, we find petitioner is entitled to no relief in this regard.

Finally, petitioner argues that the circuit court erred in denying her post-termination vitiation with the children. Petitioner asserts there was no evidence presented to prove that visitation would not be in the children's best interest and petitioner testified that she would leave her relationship with R.A.-2, which would remove any danger to the children. We find no merit to petitioner's argument.

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Although petitioner relies on her testimony that she would end the relationship with R.A.-2, she presented no evidence that she took any steps to do so. Further, petitioner presented no evidence that visitation would be in the best interest of the children, that a close emotional bond existed, or that continued contact would not be detrimental to the children's well-being. Accordingly, we find no error in the circuit court's denial of post-termination visitation between petitioner and the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 31, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison